UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN FRANCIS LECHNER,

        Plaintiff,

v.                                                                              Case No. 2:17-cv-108
                                                                                HON. ROBERT J. JONKER
TIMOTHY DECLAIRE, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff John Francis Lechner, a non-prisoner *pro se* litigant, filed this action against The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); ATF Special Agent Timothy DeClaire; ATF employee Margaret Carvill; ATF employee Melissa Alexander Coleman; The Department of Homeland Security ("DHS"); DHS Special Agent Bruce Wagner; and Assistant United States Attorney Maarten Vermaat. Plaintiff seeks monetary damages. The Court granted Plaintiff leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. Pursuant to 28 U.S.C. § 1915(e)(2)(B), the undersigned recommends that Plaintiff's claims be dismissed for failure to state a claim.

Plaintiff is no stranger to this Court. In 2012, Plaintiff was convicted by a jury of two counts of transporting explosives without a permit in violation of 18 U.S.C. § 842(a)(3)(A); two counts of improper storage of explosives in violation of 18 U.S.C. § 842(j); one count of possessing explosives while under indictment in violation of 18 U.S.C. § 842(i)(1); and one count of making a materially false statement to government officials in violation of 18 U.S.C. §

1001(a)(2).  Plaintiff was sentenced to 51 months imprisonment.  On appeal, the Sixth Circuit summarized the facts of Plaintiff's conviction:

> In 2003, Lechner, a Michigan farmer and quarry owner, received a three-year explosives permit even though the ATF had not approved his storage facilities. He then bought two tons of ammonium nitrate/fuel oil ("ANFO"), a highly explosive chemical mixture frequently used for blasting rock quarries.
>
> In 2010, Lechner rented out a house on part of his farm. The renter soon discovered two pallets loaded with 80 bags of ANFO in a nearby barn, and was concerned it was not being stored safely. In November 2010, Lechner moved this ANFO to a detached garage at another residence he owned on Blalock Row. The renter photographed Lechner loading the ANFO onto a truck and reported him to the Michigan State Police.
>
> In an unrelated incident in July 2011, Lechner got into a confrontation with police that stemmed from a property dispute with his former wife. The county prosecutor charged Lechner with three felonies. Lechner attended a preliminary hearing on September 13, 2011, and the charges were bound over for trial.
>
> Meanwhile, on another occasion in September 2011, Lechner appeared in state court concerning a ticket his son had received. An incident in the courtroom led to Lechner's being held in contempt and sentenced to thirty days in jail.
>
> While Lechner was in jail, two ATF agents interviewed him. They asked Lechner about some ANFO they knew he had purchased. He told them he had used it all up. As he later testified, Lechner was trying to prevent the agents from finding and destroying the ANFO because it had cost him a lot of money.
>
> When he got out of jail, Lechner contacted his friend and sometimes-employee, Billy Jo Verette. Lechner asked Verette to help him move the ANFO from the Blalock Row residence to Verette's mother's shed. Verette called the local authorities. They gave Verette a hidden recording device and contacted the ATF. Then, as the recording device ran, Verette helped Lechner move the 80 bags of ANFO.
>
> At one point as they loaded the ANFO onto a horse trailer, Lechner told Verette the ANFO had to be stored "according to federal regulations." Lechner said he didn't "know what the f* *k those

> [regulations] are," but that "just because you don't know, doesn't mean that you don't have to store it that way."
>
> As they unloaded the ANFO, Verette asked Lechner if he had any "big plans for this stuff." Lechner responded, "Yeah . . . When there's a revolution here. . . . When the people decide to take the government back . . . me and you will be . . . mercenaries." Although Lechner later testified that this was a joke, Verette testified that Lechner was not laughing. After Lechner left, agents seized the ANFO. The next day, agents searched the attics of two houses associated with Lechner and found blasting caps in one attic and blasting caps, boosters, and detonating cord in the other.
>
> A federal grand jury indicted Lechner and Kenneth Kassab, Lechner's employee, on nine counts of explosives-related crimes. They were tried in 2012. The jury heard Verette's secret recordings and testimony from several witnesses, including the agents who interviewed Lechner in jail and the agents who searched the attics. The government called two expert witnesses to discuss the requirements for obtaining an explosives permit and the regulations governing the storage and transportation of explosives. The jury found Lechner guilty of six counts and acquitted Kassab.
>
> Lechner moved for a new trial. He asserted he had "newly discovered evidence," by which he meant copies of ATF regulations that were not available to him while he was in jail awaiting trial. But Lechner's counsel told the court he had "thoroughly reviewed all of the significant regulations" and discussed them with Lechner before trial. The district court denied the motion.

*United States v. Lechner*, 806 F.3d 869, 872-73 (6th Cir. 2015).  Defendants DeClaire and Wager led the investigation against Plaintiff and both testified at trial.  Defendants Alexander-Coleman and Carvill were the two expert witnesses that testified regarding the requirements for obtaining an explosives permit and the regulations governing the storage and transportation of explosives.  Defendant Vermaat was the prosecuting attorney.  The Sixth Circuit affirmed Plaintiff's conviction.  *Id.* at 872.

Since his conviction, Plaintiff has filed several § 1983 actions alleging various violations of his constitutional rights that ultimately led to his criminal conviction.  These cases

-3-

have been dismissed for various reasons.  *See Lechner v. County of Chippewa et al.*, 2:14-cv-121, ECF No. 16 (dismissed because a § 1983 action cannot challenge the validity of a criminal conviction unless it has been reversed or set aside), aff'd, No. 15-1822 (6th Cir. Nov. 22, 2016); *Lechner v. County of Marquette et al.*, 2:14-cv-00168, ECF No. 13 (dismissed for want of prosecution), aff'd, No 14-2557 (6th Cir. Aug. 4, 2015); *Lechner v. County of Marquette et al.*, 2:15-cv-5, ECF No. 14 (dismissed for failure to state a claim); *Lechner v. County of Marquette et al.*, 2:17-cv-20, ECF No. 8 (dismissed as untimely).

Plaintiff has now filed another purported § 1983 action challenging events that are related to his criminal conviction.  Plaintiff's allegations against Defendants DeClaire and Wagner concern the agents' investigatory tactics and trial testimony.  Plaintiff alleges that Defendant DeClaire "sidestepped any rules and laws available" during the investigation.  PageID.10.  He claims that Defendant DeClaire never informed Plaintiff of his Miranda rights and that Defendant DeClaire lied when he testified that Plaintiff did not file renewal applications.  Plaintiff alleges that Defendant Wagner "found ways to interrogate" him outside the presence of counsel.  PageID.10.  He alleges that Defendant Wagner had no reason to interview Plaintiff's wife, who he divorced four years earlier.  Plaintiff further alleges that Defendants DeClaire and Wagner made false statements and "took other measures to initiate criminal proceedings against the Plaintiff without probable cause and for malicious purpose."  PageID.14.

Plaintiff's allegations against Defendants Alexander-Coleman and Carvill concern their trial testimony.  Plaintiff alleges that Defendant Alexander-Coleman's testimony regarding whether Plaintiff needed a permit to move the explosives was misleading and highly prejudicial.  Plaintiff alleges that Defendant Carvill's testimony regarding the mailing of permits and the inspection of ATF approved storage facilities contradicted her prior testimony.

Finally, Plaintiff alleges that Defendant Vermaat knew the state charges against Plaintiff were false but still used the charges to indict Plaintiff in federal court. Plaintiff also claims that Defendant Vermaat knew he had an "acrimonious relationship with Chippewa County Prosecutor Brian Peppler." PageID.12.

Based on these allegations, Plaintiff filed this seven-count complaint. In Count I, Plaintiff appears to allege that the explosive material was his son's property and that Defendants unlawfully seized his son's property in violation of Michigan state law and the Fourth Amendment.[1] In Count II, Plaintiff alleges that Defendants DeClaire, Wagner, and Vermaat, unlawfully seized his son's property in furtherance of a custom or policy of the "Justice Department." In Count III, Plaintiff asserts a false arrest claim against Defendants DeClaire and Wagner. In Count IV, Plaintiff asserts a false imprisonment claim against Defendants DeClaire and Wagner. In Count V, Plaintiff asserts a malicious prosecution claim against Defendants Vermaat, DeClaire, and Wagner. In Count VI, Plaintiff asserts an abuse of process claim against Defendant Vermaat. In Count VII, Plaintiff asserts an intentional infliction of emotional distress claim against Defendants Vermaat, DeClaire, Wagner, Carvill, and Coleman.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any action brought *in forma pauperis* if the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

---

[1] In Count I, Plaintiff sues Defendants in their individual capacities. In Counts II-VII, Plaintiff sues Defendants in both their individual and official capacities.

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement, . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Here, Plaintiff attempts to bring a § 1983 action against officials of the federal government. Because officials of the federal government act under color of federal law and not under color of state law, Plaintiff cannot maintain a § 1983 action against Defendants.

Nonetheless, the undersigned will construe Plaintiff's *pro se* complaint liberally and interpret the complaint as asserting *Bivens* claims. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that "less stringent standards" apply to *pro se* complaints). In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 395-97 (1971), the Supreme Court recognized that a plaintiff could pursue an action for monetary damages against federal agents who acted under color of federal law to violate the Fourth Amendment. The

Supreme Court has since recognized that *Bivens* provides a remedy for some additional constitutional violations by federal officials.  *See Carlson v. Green,* 446 U.S. 14 (1980) (extending *Bivens* claims to Eighth Amendment claims); *Davis v. Passman,* 442 U.S. 228 (1979) (extending *Bivens* claims to due process claims under the Fifth Amendment).  Thus, a *Bivens* action is the federal analog to a § 1983 action against state officials.  *Hartman v. Moore*, 547 U.S. 250, 255 (2006).

However, the Supreme Court has declined to extend *Bivens* claims to actions against federal agencies or against federal officers acting in their official capacities.  *FDIC v. Meyer,* 510 U.S. 471, 486 (1994); *Sykes v. United States*, 507 F. App'x 455, 462 (6th Cir. 2012); *see also Hampton v. Marion,* 98 F. App'x 410, 413 (6th Cir. 2004); *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991).  Therefore, to the extent Plaintiff is asserting *Bivens* claims against the ATF and DHS, those claims should be dismissed.[2]  Similarly, to the extent Plaintiff is asserting *Bivens* claims against Defendants acting in their official capacities, those claims should also be dismissed.

In addition, Plaintiff asserts tort claims against federal employees acting in their official capacities.  Thus, Plaintiff is essentially suing the United States.  *See Kentucky v. Graham*, 473 U.S. 159, 166, (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  However, the Federal Tort Claims Act ("FTCA") provides a limited waiver of the United States' sovereign immunity, and the United States may be liable for certain torts committed by federal

---

[2] Although he identified ATF and DHS as Defendants in the caption of the complaint, Plaintiff failed to specify which claims he was asserting against the ATF or DHS.  It is possible that Plaintiff's claims against Defendants in their official capacities are the claims Plaintiff is asserting against ATF and DHS.

employees. *See* 28 U.S.C. § 2671 et seq. Under the FTCA's limited waiver, intentional torts are generally exempted. However, there is an exception to the exception—a party may bring a claim of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution against investigative or law enforcement officers. 28 U.S.C. § 2680(h). The FTCA requires courts to apply the substantive law of the place where the event occurred. 28 U.S.C. § 1346(b)(1). Although Plaintiff does not specify that the tort claims against Defendants in their official capacities are brought pursuant to the FTCA, the undersigned will construe the *pro se* complaint liberally.

Despite construing the complaint liberally, Plaintiff's claims should be dismissed because they are effectively challenging the validity of his conviction. In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." The Sixth Circuit has recognized that the *Heck* doctrine applies to *Bivens* claims. *Robinson v. Jones*, 142 F.3d 905, 906-07 (6th Cir. 1998). Similarly, courts have recognized that the *Heck* doctrine applies to other civil actions challenging conduct that, if found unlawful, would render a conviction or sentence invalid. *See Paulus v. Light*, No. 96–2355, 1997 WL 461498, at *1 (6th Cir. Aug. 12, 1997) (holding that the *Heck* doctrine applies to civil RICO claims); *Bradshaw v. Jayaraman*, No. 98–6710, 1999 WL 1206870, *2 (6th Cir. Dec. 9, 1999) (applying the *Heck* doctrine to FTCA claims).

In this case, Plaintiff never successfully overturned his conviction. Therefore, Plaintiff's malicious prosecution claim must be dismissed because "[a]n element of a malicious-prosecution claim is a showing that the plaintiff prevailed in the criminal proceeding that gave

rise to the malicious-prosecution lawsuit." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 600 (6th Cir. 2007) (citing *Heck*, 512 U.S. at 484.)  Next, although it is certainly possible that claims for false arrest, false imprisonment, abuse of process, unlawful seizure, and intentional infliction of emotional distress, would not challenge the validity of a conviction, Plaintiff has failed to allege any facts other than conclusory allegations to establish these claims. For example, Plaintiff states that his son's property was unlawfully seized without probable cause in violation of the Fourth Amendment.  However, there are no facts addressing the actually seizure of the property.  Similarly, Plaintiff states that he was unlawfully arrested and imprisoned without probable cause, but there are no facts addressing Plaintiff's initial arrest or subsequent imprisonment.  Instead, the only specific facts offered by Plaintiff concern the testimony at his jury trial.  It is apparent that all of Plaintiff's claims are premised on his belief that he did not do anything wrong in the first place.  In other words, Plaintiff appears to be arguing that Defendants lacked probable cause to arrest him, imprison him, charge him, and seize his son's property because he did not commit a crime.  This argument did not prevail at trial or on appeal before the Sixth Circuit.  Moreover, Plaintiff cannot rely on this argument in this case.  Therefore, in the opinion of the undersigned, Plaintiff's claims are challenging the validity of his conviction and should be dismissed pursuant to *Heck*.

In addition to being barred by *Heck*, Plaintiff does not have standing to bring the claims in Counts I and II, which state that Defendants unlawfully seized his son's property.  It appears that the "property" Plaintiff is referring to is the explosive material that was the subject of Plaintiff's criminal convictions.  Assuming that Plaintiff's allegations are true, Plaintiff has not alleged any facts to establish that he has standing to assert these claims on behalf of his son. Furthermore, even if Plaintiff had standing to bring these claims on behalf of his son, the

explosives were part of criminal forfeiture proceedings and his son failed to assert any interest in the property during those proceedings. *See United States v. Lechner*, 2:11-CR-49, ECF No. 146 & ECF No. 159. Therefore, in the opinion of the undersigned, Plaintiff does not have standing to bring the claims in Counts I and II.

Finally, the undersigned finds that Plaintiff's claims are also untimely. "If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 215 (2007). There is no federal statute of limitations for *Bivens* actions; however, courts apply the state statutes of limitations and tolling principles to determine the timeliness of federal constitutional claims. *See Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985); *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005). Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. See Mich. Comp. Laws § 600.5851(9). Moreover, ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002); *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991). Under Michigan law, the statute of limitations for civil rights suits is three years. Mich. Comp. Laws § 600.5805(10) (setting the statute of limitations for "for all actions to recover damages for the death of a person, or for injury to a person or property" not otherwise specified in a separate provision); s*ee also McCune v. City of Grand Rapids*, 842F.2d 903, 905 (6th Cir. 1988); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam). The accrual of the claim, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved

party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.

Here, although he failed to include specific dates in his complaint, all of Plaintiff's allegations relate to events that occurred prior to or during his jury trial, which ended on June 21, 2012. Thus, Plaintiff's claims must have accrued prior to June 21, 2012.[3] Plaintiff did not file this complaint until June 16, 2017, which is nearly two years past the three-year statute of limitations.

In addition, Plaintiff's claims under the FTCA should also be dismissed because Plaintiff failed to follow the prerequisite administrative requirements. Under the FTCA, the claim must first be submitted to the proper federal agency before a party may bring such an action in federal court. 28 U.S.C. § 2675(a). The statute of limitations for these actions requires that the claim be "presented in writing to the appropriate Federal agency within two years after such claim accrues or . . . within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). Plaintiff has failed to establish that he filed a claim with AFT or DHS. Therefore, Plaintiff's tort claims against Defendants in their official capacities should also be dismissed.

Accordingly, the undersigned recommends that the complaint be dismissed under 28 U.S.C. § 1915(e)(2) for failure to state a claim on which relief can be granted.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

---

[3] The undersigned notes that the actual accrual date for each of Plaintiff's claims is unclear. Under *Heck*, a malicious prosecution claim does not accrue until the underlying conviction is invalidated. 512 U.S. at 489-90. However, as discussed above, Plaintiff's conviction was never overturned. In *Wallace v. Kato*, 549 U.S. 384, 392 (2007), the Supreme Court refused to apply the *Heck* accrual rule to a § 1983 false arrest claim under the Fourth Amendment. Accordingly, Plaintiff's claims for false arrest, false imprisonment, and unlawful seizure, accrued when he was arrested and the property was seized. However, Plaintiff failed to include any dates of these events in his complaint.

-12-

of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  July 12, 2017

    /s/ Timothy P. Greeley_____
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE